Richard M. Foster, State Bar No. 93909
Richard@rmflaw.com
**LAW OFFICE OF RICHARD M. FOSTER**
5429 Cahuenga Boulevard
North Hollywood, California 91601
Telephone No: (818) 508-1500
Fax No: (818) 508-1529

Attorneys for Plaintiff Elite Surgical Clinic,
Medical Corporation; Susan L. Chobanian, M.D.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTICT OF CALIFORNIA

| | |
|---|---|
| ELITE SURGICAL CLINIC, MEDICAL CORPORATION, a California corporation; SUSAN L. CHOBANIAN, M.D.;<br><br>Plaintiffs,<br><br>vs.<br><br>CYNOSURE, INC, a Delaware corporation; and DOES 1 through 50,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. NEGLIGENT MISREPRESENATION;<br>2. FRAUD, INTENTIONAL MISREPRESENTATION;<br>3. RESTITUTION,<br>4. NEGLIGENCE; and<br>5. BREACH OF CONTRACT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs ELITE SURGICAL CLINIC, MEDICAL CORPORATION and SUSAN L. CHOBANIAN, M.D. ("Elite", "Chobanian" or "Plaintiffs"), through their attorneys, complains and alleges, against CYNOSURE, INE, a Delaware corporation, and DOES 1-50 as follows:

## THE PARTIES

1. Plaintiff ELITE SURGICAL CLINIC, MEDICAL CORPORATION, is a California corporation with its principal place of business in the County of Los Angeles.

2. Plaintiff SUSAN CHOBANIAN, M.D., is an individual residing in the State of California, in the County of Los Angeles.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant CYNOSURE, INC. a Delaware corporation operating in the State of California, with its principal place of business in Los Angeles, California and doing business within this judicial district.

4. Plaintiff does not know the true names and capacities of the Defendants sued as DOES 1 through 50, inclusive, and therefore sue such Defendants by such fictitious names. Plaintiff is informed and believe, and based thereon allege, that each of the Defendants sued as Does 1 through 50 is responsible, in some manner, for the wrongful conduct alleged below, and that Plaintiff's injuries alleged below were proximately caused by such Defendants' wrongful acts. Plaintiff will amend this Complaint to allege such Defendants' true names and capacities when such are ascertained.

5. Plaintiff alleges upon information and belief that each named and fictitious Defendant sued herein was the agent, employee, officer, director, partner, principal and/or co-conspirator of every other named and fictitious Defendant, and that the acts of each named and fictitious Defendant were with the scope of such agency, employment, service, partnership and/or conspiracy in engaging in the acts and/or omissions alleged herein.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 in that (a) Plaintiff is in a different state that is Defendant; (b) the amount in controversy exceeds $100,000.

7. The court has personal jurisdiction over the action and venue is proper in the Central District of California under 28 US.C. section 1391 because plaintiff is located in Glendale, California and because the improper conduct alleged hereis occurred in this District.

## GENERAL ALLEGATIONS

8. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth herein.

9. In 2016, Plaintiffs purchased from Defendant's representative Chris Houston, a SculpSure machine.

10. Defendant made representations that the number of machines was limited to only 30 nationwide. That the machine would painlessly dissolve body fat and was very effective. These promises were untrue.

11. Plaintiffs attempted to communicate their displeasure with Mr. Houston; however, their complaints were ignored by Defendant.

12. Plaintiffs had to cease using the SculpSure machine to prevent harm to their patients.

13. In November 2017, Louis Chambers, Defendant's new product representative, presented Plaintiffs with a new laser machine TempSure. Mr. Chambers made representations that Cynosure desired to make up for the false promises that had been made in the SculpSure debacle.

14. After several months of discussion, on February 26, 2018, Plaitniffs elected to purchase the TempSure product with the conditions listed below:

    a. Purchase price of the TempSure will be $130,500.

    b. Cynosure will allocate the $15,000 allowance for marketing to be taken off of the stated purchase price, thereby lowering it to $115,750 (included $250 for shipping).

    c. SculpSure Submental will be provided with this purchase with no charge to Plaintiffs.

    d. Plaintiffs would pay $99 per month for the first six (6) months for the TempSure product starting in March 2018.

    e. After the six month period the full payments for TempSure would begin.

  f. Also, after that six month period, the payments for the SculpSure ($3,713.61) would stop. At this time Defendant Cynosure would pay off or extinguish the debt owed on that purchase.

15. These terms were notated on the second page of the order written by Defendant's agents Louis Chambers and R. J. Sweetney.

16. This second page was then emailed to Plaintiffs to confirm the agreement. The attachment, which was the second page of the contract which was entered on that date, is attached as Exhibit 1, along with the email from Defendant's sales agent Rennard Sweetney.

17. The first page of the Customer Purchase Agreement further notes and confirms this agreement which is in Defendant's agent Mr. Chamber's handwriting. This deal was only valid upon Defendants approval of these terms which are notated above and were page two of the contract.

18. After that date the machine was shipped and received by Plaintiffs.

19. When Plaintiffs received a copy of the contract there was on the first page which states, Sculpture Submental Upgrade Included, $22,800 rebate included.

20. This was not a part of the original agreement that Plaintiff accepted and appears to be a simple bonus that Defendants elected to add with this purchase.

21. At no time was Plaintiff Elite contacted regarding a change to the terms of the contract that was agreed.

22. Plaintiff attempted to user the ScuptSure and the TempSure machines, However, neither has performed as represented. In fact more complaints of pain and extreme discomfort arise from patients after use.

23. Plaintiffs have made numerous request to Defendants Cynosure, Hologic, the sales representatives and customer service directors. All requests to address this contractual agreement have been ignored.

24. Plaintiffs made an agreement which was accepted by Cynosure. Now Cynosure is failing to honor the agreement and has breached.

**4**
**COMPLAINT**

25. Documentation of the agreement has been properly presented, yet their issues have fallen on deaf ears.

26. Plaintiff attempted to resolve this matter amicably, but Defendant did not respond or cooperate.

27. Plaintiffs have attempted to return both the ScuptSure and TempSure machines back to Cynosure.

28. Plaintiff did not discover the forged contract and the missing terms until November 2018, when Defendant refused to honor the initial agreement made.

29. Upon investigating this matter further, Plaintiffs learned that Defendants had made changes to the original contract that were never agree to by Plaintiffs.

///

## FIRST CAUSE OF ACTION
### Negligent Misrepresenation
**(Plaintiffs Against all Defendants)**

30. Plaintiff incorporates, herein by reference, the allegations made in the preceding paragraphs as though fully set forth herein.

31. The representations made by Cynosure that the TempSure product would remove and eliminate fat were false statements of material facts. Defendant made further false statements of material facts that the TempSure product would have the characteristic and benefit of being able to remove or eliminate fatty deposits with less treatments and less expense to the patients.

32. The representations were known to be false by the defendant at the time that they were made. Specifically, the representations made by Defendant that the TempSure product would remove or eliminate fat was known by Cynosure to be false.

33. Defendant made the aforementioned representations with the intent that consumers would rely upon them to induce them to purchase the TempSure product.

34. Defendant's misrepresentations were such that reasonable practitioners considered them in deciding whether to purchase Defendant's TempSure product. At all relevant times, Plaintiffs relied on these statements in purchasing the TempSure product.  Had Plaintiffs known, they would not have purchased the TempSure product, would have returned their TempSure product for a refund, would have paid substantially less for it, or would have purchased a similarly functioning product for substantially less.

35. As Plaintiff's TempSure product, including the software upgrade provided by Cynosure, cannot eliminate fat at all, Defendant's representations were false and misleading, and constitute negligent misrepresentation.

36. The aforementioned conduct of Defendants' officers was done in a violent, unreasonable, and offensive manner, causing Plaintiff to suffer further severe physical and emotional harm.

37. As a direct and proximate result of the aforesaid negligent misrepresentation, plaintiffs have suffered harm in the form of monies paid to Defendant.

38. As a direct and proximate result of Defendant's misconduct, Plaintiffs have suffered actual damages in the form of monies paid to purchase the TempSure product, as well as the difference in value between a TempSure product and one that truly eliminated fat deposits.

39. The conduct of the Defendants, and each of them, deprived Plaintiff of the right of not to be subjected to excessive force during the course of a search, an arrest, an investigatory stop, or a seizure of his person, as secured by the Fourth Amendment to the Constitution of the United States.

40. As a proximate cause of the Defendants' conduct, Plaintiff is incurring attorney fees and litigation costs, including the costs of retaining experts.

## SECOND CAUSE OF ACTION

### Fraudulent/Intentional Misrepresenation

**(Plaintiffs Against All Defendants)**

41. Plaintiff incorporates, herein by reference, the allegations made in the preceding paragraphs as though fully set forth herein.

42. Defendant made the aforementioned representations that the TempSure product would eliminate and remove fatty deposits.

43. Defendant knew that its statements regarding the TempSure product were false and misleading at the time that it made them.

44. Defendant made the aforesaid representations with the specific intent to induce Plaintiffs to purchase the TempSure product.

45. Plaintiffs relied upon these false representations and as a result were induced to purchase a TempSure product which did not function as represented. Further, Defendants manipulated and fraudulently changed the contract terms to remove the negotiated terms that were material to Plaintiffs purchasing the TempSure machine.

46. Defendant engaged in advertising and marketing to the Plaintiff that promised the TempSure machine to a select few medical professionals. Defendant publicly represented and advertised that the TempSure product would eliminate fatty deposits without pain, discomfort or surgical intervention. Defendant did so with the intent to induce Plaintiffs to purchase and continue using the TempSure product.

47. Defendant's advertising and marketing statements were and are untrue and misleading and were intended to deceive Plaintiffs in that they portrayed the existence of a technical ability to eliminate fatty deposits and benefit the patient, which Defendant knew or should have known it was unwilling or unable to deliver.

48. Defendant's representations that the TempSure product would eliminate patients' fat deposits, without pain, discomfort or diet, when in fact it

would not, is deceptive conduct that created confusion and misunderstanding for Plaintiffs.

49. As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs have suffered harm in the form of monies paid to Defendant. Plaintiffs, seeks an order (1) requiring Defendant to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendant to restore to Plaintiffs any money acquired by means of unfair competition/ deceptive conduct (restitution).

50. Through their conduct, Defendants acted maliciously and oppressively in willful and conscious disregard for Plaintiff's rights and safety and with the intent to harm Plaintiff. Plaintiff is therefore entitled to punitive or exemplary damages from the individual officers in an amount to be determined by proof at trial.

## THIRD CAUSE OF ACTION

### Restitution

### (Plaintiffs Against All Defendants)

51. Plaintiff incorporates, herein by reference, the allegations made in the preceding paragraphs as though fully set forth herein.

52. Plaintiffs have conferred a benefit upon Defendant. Defendant has received and retained money belonging to Plaintiffs as a result of its unlawful and deceptive practices alleged herein.

53. Defendant appreciates or has knowledge of said benefit.

54. Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs that it unjustly received as result of its actions.

55. Plaintiffs have suffered financial loss as a direct result of Defendant's conduct.

56. Plaintiffs, seeks restitution and disgorgement of the monies Defendant

received as a result of its conduct described herein, as well as interest, to the extent allowable.

## FOURTH CAUSE OF ACTION
### Negligence
### (Plaintiffs Against All Defendants)

57. Plaintiff incorporates, herein by reference, the allegations made in the preceding paragraphs as though fully set forth herein.

58. On and prior to November 1, 2018, Cynosure owed a duty to its consumers to warn of known defects, hazards or unreasonably dangerous conditions arising out of the use of the TempSure product.

59. Defendant at no time warned its medical professional clients that the TempSure product does not perform as represented. Specifically, Defendant did not warn Plaintiffs in any way that the TempSure product did not remove or eliminate fatty deposits without pain, discomfort, or could cause burns and severe pain when used as directed.

60. As a direct and proximate result of the Defendant's failure to warn, Plaintiffs have suffered harm in the form of monies paid to Defendant. Plaintiffs, seek an order: (1) requiring Defendant to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendant to restore to Plaintiffs any money acquired by means of unfair competition/ deceptive conduct (restitution).

## FIFTH CAUSE OF ACTION
### Breach of Contract
### (Plaintiff Against All Defendants)

61. Plaintiff incorporates, herein by reference, the allegations made in the preceding paragraphs as though fully set forth herein.

62. Plaintiffs entered into a form contract with Defendant at the time they purchased their TempSure Workstation. The terms of the contract include the

promises and affirmations of fact made by Defendant to each class member in the form of the written advertising materials including, but not limited to, the document attached as Exhibit 1.

63. Defendants through their agents made contract terms that were specifically requested by Plaintiff. These included a purchase of the TempSure RF generator, use for six months at a reduced fee, after six months they could return the SculpSure machine that did not operate as promised and continue paying for the TempSure machine.

64. Plaintiffs' TempSure Workstation did not perform as promised.

65. Defendant breached the terms of the contract with Plaintiffs by not providing TempSure Workstation with capabilities and functionality as advertised in the TempSure documents which were incorporated into the contract.

66. When Plaintiffs contacted Cynosure after the trial period, they learned that Defendants had made material changes to the contact to which Plaintiff had signed and agreed.

67. As the foreseeable and actual result of Defendant's breach of contract, Plaintiffs were damaged in an amount that was paid to purchase the TempSure product, as well as the difference in value between a TempSure product and one that truly eliminated fatty deposits.

68. Plaintiffs have suffered loss of profits, costs and attorney's fees as a result of the Defendants breach of contract in an amount that is within the jurisdiction of the Federal Court and will be determined prior to the trial in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgments against the Defendants, and each of them as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For cost of suit incurred herein;
4. For punitive or exemplary damages against the Defendants, in an amount to be determined according to proof at trial;
5. For interest;
6. For reasonable attorney's fees; and
7. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED: October 7, 2021               L<small>AW</small> O<small>FFICE OF</small> R<small>ICHARD</small> M. F<small>OSTER</small>

By: _____
Richard M. Foster
Attorneys for Plaintiffs,
Elite Surgical Clinic;
Susan L. Chobanian, M.D.

## CERTIFICATE OF SERVICE

    I do hereby certify that a true and correct copy of the foregoing was filed on the date set forth hereon electronically via CM/ECF in the United States District Court for the Central District of California, Los Angeles Division, with notice and copy of same being electronically served by the Court upon all counsel of record.

                                          Anet Zeynalyan